STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. LESTER UNDERDOWN, PLAINTIFF IN ERROR.

*Argued October 23, 1930—Decided February 2, 1931.*

For the state, *James Mercer Davis* (*Wilfred H. Jayne, Jr.,* on the brief).

For the plaintiff in error, *Howard Ewart.*

The opinion of the court was delivered by

Case, J. The defendant, Lester Underdown, was indicted jointly with Claude Carmichael, Madison Chapel and Harriet Evans for the murder of Robert Evans on May 15th, 1930, in Jackson township, Ocean county. At the trial a severance was granted as to Carmichael and Chapel; and Underdown and Evans were tried jointly. Both of the last named defendants were convicted of murder in the first degree without recommendation. Underdown sued out a writ of error and, under section 136 of the Criminal Procedure act, brings up the entire record of the proceedings had upon the trial. He wrote down twelve specifications of causes for reversal, of which seven are argued.

Under point one defendant argues specifications one to five, inclusive. These are portions of the court's charge containing references to a written confession that had been made by Mrs. Evans, in the absence of Underdown, after the commission of the crime and before trial. The point sought to be made is that the court's charge could not but have been understood by the jury as permitting and requiring them to consider the confession in determining Underdown's guilt. The confession was admitted as an exhibit against Mrs. Evans. A review of its contents is unnecessary further than to observe, as will appear from references in the court's charge, that it sharply clashed with Underdown's evidence on salient points, involved him immediately in the commission of the crime and was a direct contradiction of his defense of *alibi*. Except for such weight as the confession carried, the reliance of the state in proving Underdown's presence at the crime was chiefly on Chapel and Carmichael, confessed accomplices. The confession was, of course, not evidential against Underdown. The state does not seek to justify the use of the confession against Underdown. Indeed

it denies that that was either the purpose or the effect of the admission of the exhibit and asserts that the court's charge is an explicit instruction to the jury to disregard the confession in determining the guilt of Underdown; and thereon lies the issue.

The situation presented obvious difficulties to the presiding judge. Two defendants were on trial for the same offense; much of the evidence was competent against both, some against one only; the whole case went to the jury in one charge. Necessarily all the evidence competent against Mrs. Evans, including the confession, should go to the jury against her; comments thereon as to her were proper. But the confession was not competent as against Underdown, and if the court's presentation to the jury was such as would likely lead the jury to an opposite understanding, there was error.

The following are excerpts from the charge: "The defendant Harriet Evans, if you believe the testimony or some part of it introduced in the case, was at least indiscreet with the defendant Underdown and had been indiscreet with him for a long period of time. Several women came here and testified that Harriet was not anxious that her husband should return; that she had expressed herself, you will recall, in more or less certain terms that she was not anxious to have him return. If you believe some of the testimony it appears that on the eve of his retirement a man named Bagwell and the defendant Underdown had gone to New York to learn of his plans. Underdown denies that he went there. It is for you to say where the truth lies, who is telling the truth. You must weigh the evidence of the witnesses and determine where the truth lies. You recall what Bagwell testified to. You heard the confession of Harriet Evans read by one of the officers of the county. You heard the testimony of Chapel to the effect as to how this thing happened on the night of May 15th. You heard the testimony of Carmichael. Now there are variations between the testimony of Chapel and the testimony of Carmichael. There are some variations between the testimony of Bagwell and the testimony of Underdown. There is some variation between the testimony of

Chapel and Carmichael and the confession which was made by Mrs. Evans, apparently, as the testimony or some of it tends to show, when she was at the house. But the testimony of Chapel and the testimony of Carmichael show that they and Underdown were at this place on the evening of May 15th. It also shows that all three were armed with 30-30 guns; that those guns were loaded. The confession of Mrs. Evans shows that Underdown was in the group. You will recall just what she said about that, but my recollection is that she said she heard a shot go whizzing by when she was in her house; she stepped out and was told to go over and stand by the stand with Chapel; and who told her to do that, does she say? Underdown—Underdown, with whom she had been indiscreet for a long period of time; Underdown, who had the freedom of the house, who drove her car, paid nothing for it, had free liquor, as he testified himself, and her money. She says he was there; Carmichael says he was there; Chapel says he was there. Bagwell says that he went over to New York about the 15th of May. Underdown says: 'No, I didn't. I was in the barracks.' There is testimony to corroborate him as to that. But it is for you to say where the truth lies. * * * Underdown denies that he was there or that he fired any of the shots. There were three of them there, if you believe Carmichael and Chapel, and they seem to be supported to some extent by the confession of Mrs. Evans, and there were three bullets and there were three men and there were three marines. Now it is for you to say where the truth is. * * * It was his [Underdown's] gun that was in on the deed. Does not that circumstance tend to corroborate and substantiate and support the testimony of Chapel and Carmichael, and the confession of Mrs. Evans? Doesn't it all work together and interact? It is for you to say; I don't know. The facts of the case are for you. * * *" The importance of a correct appraisal by the jury of this testimony is indicated by the court in this remark slightly further along in the charge: "Of course in this case the presence of the defendant Underdown at the commission of the crime is essential to his conviction."

We interpret the foregoing language as the equivalent of an instruction that, in determining the truth or falsity of Underdown's defense, the contents of Mrs. Evans' confession might be considered. Was that element of the charge modified by other instruction by the court to the jury? And, if so, with what legal effect?

At the time the exhibit was admitted the court overruled the objection of Underdown's attorney to the admission but, on the latter's suggestion, instructed the jury as follows: "Ladies and gentlemen of the jury, a statement made by Mrs. Evans in the absence of Underdown is, of course, not binding upon Underdown at this stage of the case and you will disregard it so far as it may affect the defendant Underdown." The use of the word "binding" was inept as a complete negation of the application of the exhibit to Underdown's case, though the court was here merely repeating the phrase suggested by defendant's attorney; and the modification of the instruction by the inclusion of the words "at this stage of the case" deprives the language of such finality as would reach effectively through and beyond the portions of the charge quoted above.

However, the court did, after the deliverances, already quoted, instruct the jury in such fashion as, according to the state's contention, to purge the charge of any misapprehension or confusion; and that language was: "Statements made by one of the defendants not in the presence of the other are not binding upon the other. In other words, the admissions, confessions or statements of Mrs. Evans and of Underdown are not binding upon the other, if not made in the presence of the other, and must not be considered by you in determining the guilt of the one not making the statement." Here, too, the word "binding" was not the full equivalent of "admissible" or "evidential." Testimony may be evidential without being binding; this was neither so far as Underdown was concerned. But assuming that the direction was a complete statement of the applicable legal principle, it was at the best merely contradictory of the earlier portions of the charge, thus making two contradictory propositions as applicable to the same state of facts, with the jury

at liberty to adopt whichever principle they chose. Such an instruction is error. *Metropolitan Construction Co.* v. *Brazos,* 81 *N. J. L.* 649. The rule is well settled that an erroneous instruction followed or accompanied by a correct one is not cured by the latter unless the former is also expressly withdrawn, as the jury is left at liberty to adopt either, and it cannot be said which one was in fact adopted. *State* v. *Tapack,* 78 *Id.* 208. A jury is not required to determine what part of a contradictory charge is correct. *State* v. *Sandl,* 95 *Id.* 49. If we consider the charge as a whole, under the principle stated in *McLaughlin* v. *Damboldt,* 100 *Id.* 127, we are still confronted with the fact that the case went to the jury with two conflicting sets of legal instructions. The one, unsound in law and prejudicial to the defendant, was given equal force and favor with the sound and correct. We conclude that this was harmful error.

Defendant complains under his second point that the court did not charge in the language of his request on the subject of reasonable doubt, and under his third point that the court did not charge in the language of his request on the subject of the giving of false testimony. The charge was comprehensive and without fault on the subject of reasonable doubt; and the language of the charge with respect to the giving of false testimony, while not in the precise words of the request, was, in our opinion, more favorable to the defendant than, and quite as complete as, that of the request. The court is not bound to instruct the jury in the identical language of a request or to adopt the form or words or the collocation of phrases in which the request to charge is framed. *McLaughlin* v. *Damboldt, supra.* We find no error therein.

For the reasons gathered under the defendant's point one the judgment below must be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, CAMPBELL, LLOYD, CASE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 12.